UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JAMES D. BIRD II, ) | |
| ) | Case No. 3:17-cv-206 |
| *Plaintiff*, ) | |
| ) | Judge Travis R. McDonough |
| v. ) | |
| ) | Magistrate Judge Debra C. Poplin |
| JAMES WOODALL ET AL., ) | |
| ) | |
| *Defendants*. ) | |

## MEMORANDUM OPINION

Before the Court are Plaintiff's motion for instruction (Doc. 71) and Defendant Steve Cantrell's motion for summary judgment (Doc. 72). For the reasons set forth below, Defendant Cantrell's motion for summary judgment will be **GRANTED**, and Plaintiff's motion for instruction will be **DENIED AS MOOT**.

**I.    MOTION FOR INSTRUCTION**

Plaintiff makes three requests in his motion for instruction. (*See* Doc. 71, at 1.) First, he asks the Court to correct the spelling of his name in the scheduling order and to correct the date of the Sixth Circuit's order in this case. The Court acknowledges these errors, and **CLARIFIES** that the correct spelling of Plaintiff's last name is "BIRD" and the correct date of the order of the Court of Appeals is April 27, 2020 (*see* Doc. 66).[1] Plaintiff next asks the Court whether he needs to refile any materials related to discovery, dispositive motions, and his pretrial narrative that he filed before his appeal. (Doc. 71, at 1.) The Court **CLARIFIES** that Plaintiff should not

---

[1] The Court further acknowledges that the Sixth Circuit's order was filed in the Court of Appeals case on April 21, 2020, but that it was not filed in this case until April 27, 2020. (*See* Doc. 66.)

refile any document that he has already filed in this case; rather, the dates set forth in the Court's most recent scheduling order merely extended the deadlines so that the parties could engage in any necessary additional discovery, file any other dispositive motions, and file an amended pretrial narrative statement in light of the Sixth Circuit's order. (*See* Doc. 70.) Third, Plaintiff requests instruction regarding the appointment of counsel. (Doc. 71, at 1.) However, as the Court of Appeals stated in its order, "there is no constitutional right to be appointed counsel in a civil case." (Doc. 66, at 7 (citing *Glover v. Johnson*, 75 F.3d 264, 268 (6th Cir. 1996).) Thus, the Court **INSTRUCTS** Plaintiff that he is not entitled to counsel unless he demonstrates some extraordinary circumstance that would justify the appointment of counsel, which he has not. Finally, to the extent any of the requests in Plaintiff's motion for instruction remain unresolved, they are **DENIED AS MOOT**, as Defendant Cantrell has demonstrated that he is entitled to summary judgment on Plaintiff's remaining claim. *See infra* Section II.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Background

#### i. *Procedural History*

Plaintiff filed this action, brought pursuant to 42 U.S.C. § 1983, on May 8, 2017. (*See* Doc. 1.) Plaintiff's initial complaint raised numerous claims, largely related to the conditions of his confinement at Morgan County Correctional complex in Warburg, Tennessee, against various Defendants. (*See id.*) On July 12, 2017, the Court entered an order screening Plaintiff's complaint, in which the Court dismissed some claims and Defendants and allowed other claims to proceed. (Doc. 5.) On January 28, 2019, the remaining Defendants filed a motion for summary judgment (Doc. 43), which the Court granted (*see* Doc. 58). Plaintiff timely appealed the Court's order granting summary judgment and dismissing the case (*see* Doc. 62), and the

United States Court of Appeals for the Sixth Circuit affirmed in part and vacated in part this Court's decision and remanded to this Court for further proceedings (*see* Doc. 66). Pursuant to the order of the Court of Appeals, only Plaintiff's Eighth Amendment claim for the denial of basic hygiene products against Defendant Cantrell remains unresolved. (*See id.*) Cantrell now seeks summary judgment on the remaining claim. (Doc. 72.)

### ii. Relevant Facts

The following facts, taken from Defendant Cantrell's statement of material facts, are undisputed:

> Plaintiff James D. Bird is a Tennessee Department of Correction inmate, serving a maximum sentence of 101 years and 6 months for aggravated robbery, two counts of aggravated rape, special aggravated kidnapping, felony escape, and aggravated burglary. Inmate Bird has prior convictions for forgery. In prison, inmate Bird was convicted of the Class A disciplinary of assault on an inmate with a knife and ordered to pay restitution for the medical expenses in the amount of $3,889.78. On May 24, 2016, Tennessee Department of Correction began withdrawing money from inmate Bird's prison trust fund account to pay said restitution.

(Doc. 74, at 1–2 (citations omitted); Doc. 75, at 1 (acknowledging the truth of these statements).)

Defendant Cantrell has been an employee of the Tennessee Department of Correction ("TDOC") for more than 30 years. (Doc. 73, at 2; Doc. 74, at 4.) Since 2009, Cantrell has severed as the Chaplain of the Morgan County Correctional Facility ("MCCX") in Wartburg, Tennessee. (Doc. 73, at 2; Doc. 74, at 4.) In 2016, churches donated items such as soap, shampoo, toothbrushes, and toothpaste for distribution within MCCX, and, according to Cantrell, such donations tended to include more soap and toothbrushes than shampoo and toothpaste. (Doc. 73, at 2; Doc. 74, at 4.) The Chaplain's office would distribute the donated items to inmates "who had no money in their trust fund accounts," but the supply of such items depended on what was donated. (Doc. 73, at 2; Doc. 74, at 4.) The State of Tennessee did not provide the Chaplain's office with a budget to purchase additional items. (Doc. 73, at 2; Doc. 74, at 4.)

3

Pursuant to TDOC policy 208.01(VI)(V), TDOC unit managers distributed state-issued hygiene kits to inmates in their pods whose trust fund balance fell below $6.00. (Doc. 73, at 2–3; Doc. 74, at 5.) Each state-issued kit includes four bars of soap, two shaving razors, a comb, a tube of toothpaste, and a toothbrush. (Doc. 73, at 4; Doc. 74, at 10.) However, the distribution of donated items through the Chaplain's office was separate from TDOC's own distribution of hygiene kits to indigent inmates. (Doc. 73, at 2; Doc. 74, at 5.) Cantrell represents that he had no control over the distribution of state-issued hygiene kits. (Doc. 73, at 3; Doc. 74, at 5.)

When an inmate made a written request for hygiene items from the Chaplain's office, Cantrell made a "contact note," noting the request. (Doc. 73, at 3; Doc. 74, at 5.) Cantrell made two contact notes in relation to Plaintiff's request for items, dated June 27, 2016, and October 26, 2016. (Doc. 73, at 3; Doc. 74, at 6.) In response to Plaintiff's requests, the Chaplain's office provided Plaintiff with soap and a toothbrush. (Doc. 73, at 3; Doc. 74, at 6.) Cantrell notes that no toothpaste was available to give to Plaintiff. (Doc. 73, at 3; Doc. 74, at 6.)

The costs of a bar of soap and a tube of toothpaste at the MCCX commissary are $0.30 and $1.87, respectively. (Doc. 73, at 3; Doc. 74, at 7.) On May 26, 2016, Plaintiff's mother put $35.00 in his trust fund account. (Doc. 73, at 3; Doc. 74, at 8.) Plaintiff spent $11.22 at the commissary on June 1, 2016, and $18.73 at the commissary on June 6, 2016. (Doc. 73, at 3–4; Doc. 74, at 8.)

The balance in Plaintiff's trust fund account as of September 14, 2016, was $8.87, after paying his restitution and monthly cable television charge. (Doc. 73, at 4; Doc. 74, at 8.) Defendant did not spend the remaining $8.87 for over a week. (Doc. 73, at 4; Doc. 74, at 8.) Plaintiff represents that he was not aware at that time of the amount remaining in his account (*See* Doc. 74, at 8; Doc. 75, at 3.) On September 22, 2016, after making a payment for a sick

call, Plaintiff had $0.87 left in his account, but did not purchase any commissary at that time. (Doc. 73, at 4; Doc. 74, at 8–9.)

On October 13, 2016, Plaintiff had $5.15 in his account but made no purchases for twelve days, and, on October 25, 2016, Plaintiff had $1.15 in his account and did not purchase anything for two days. (Doc. 73, at 4; Doc. 74, at 9.) Plaintiff represents that, on both of these occasions, he was unaware that he had any funds in his account. (*See* Doc. 74, at 9; Doc. 75, at 3.)

On November 8, 2016, Plaintiff filed an inmate grievance, which stated as follows:

> Y[']all take 100% of my money for restitution over assault case from 1-21-14. My uncle . . . called up here a few weeks ago and spoke to [a] Jessica or someone and told her my situation and that everytime [sic] I went to the Chaplain that they never had deodorant or shampoo or toothpaste and that this has been going on for over 6 months. She then told him that she would allow only ½ my money be taken on [November] state draw, and for me to send her a request. So I did so and I received the request back stating that she can take my account down to [zero cents]. Something has to be done to get around this situation. It is "inhuman[e]" not to provide me proper [hygiene] or allow me to order it. I have suffered 2 cavit[ies] and dental issues [by] not being able to brush my teeth.

(Doc. 1, at 24–25; Doc. 73, at 4; Doc. 74, at 10.) Plaintiff states as his "requested solution" to the grievance, "that I be given the proper [hygiene] to meet my needs or I be given a break every 3 months on State [payments] to order my [hygiene]/writing materials." (Doc. 1, at 24.)

On November 16, 2016, a TDOC supervisor responded to Plaintiff's grievance, stating:

> You are not eligible for a hygiene kit per policy 208.01(VI), but I have included where you received (2) hygiene kits from Chaplain Steve Cantrell on 6/27/16 and 10/26/16. Policy is being followed properly taking your funds down to [zero] for the restitution charges. You currently still owe $3,587.00 as for today on this restitution charge. This will continue until all of this has been collected. Please continue to go to the Chaplain for your hygiene needs.

(*Id.* at 26.)

On November 15, 2016, Plaintiff lost his prison job and was placed in a maximum-security unit after he committed an assault with a deadly weapon on another inmate. (Doc. 73, at

4; Doc. 74, at 9.) With no job and no monthly income, Plaintiff qualified for the state-issued hygiene kits. (Doc. 73, at 4; Doc. 74, at 10.) Cantrell represents that Plaintiff began receiving the state-issued kits on November 17, 2016, but Plaintiff denies this. (Doc. 73, at 4; Doc. 74, at 10.)

Plaintiff claims that, due to his lack of access to hygiene items, he suffered a urinary tract infection, tooth pain and tooth loss, a cold, sores and rashes on his feet, and post-traumatic stress disorder ("PTSD"). (Doc. 43-1, at 34.) Dr. Benjamin Howard, the dentist who treats inmates at MCCX, averred that Plaintiff requested treatment on July 7, 2016, for tooth pain. (Doc. 43-7, at 1.) On November 7, 2016, Plaintiff requested that Dr. Howard extract one of his teeth, which Dr. Howard did on January 23, 2017. (*Id.* at 2.) Dr. Howard avers, however, that the tooth "was in bad shape and in need of treatment prior to the summer of 2016," and that "[a]n alleged lack of toothpaste in the summer and fall of 2016 had no impact on the condition of [Plaintiff's tooth] and was not a factor in the need to extract said tooth in January 2017." (*Id.*) Plaintiff's dental records indicate that he had dental issues prior to his first prison examination in 2001 and that he continued to require dental treatment and occasionally tooth extractions between 2003 and 2017. (*Id.* at 3–24.)

Dr. Ronald Higgs, who treats the medical needs of inmates at MCCX, averred that Plaintiff reported on August 22, 2016, "that he had been experiencing chest congestion and a cough for 4 days" but that the cause of his cold "cannot be determined with a reasonable degree of medical certainty." (Doc. 43-8, at 1.) Dr. Higgs nevertheless opines that "the amount of soap available to inmate Bird in the summer of 2016 did not cause inmate Bird's cold." (*Id.*) Dr. Higgs also opines that a lack of soap in the summer of 2016 would not cause a urinary tract infection. (*Id.*) Finally, with regard to Plaintiff's PTSD, Dr. Higgs avers that Plaintiff's PTSD

6

predated the summer of 2016 and opines that "the events alleged in inmate Bird's complaint did not affect his PTSD condition." (*Id.* at 1–2.) Plaintiff suggests that he developed PTSD prior to 2016 but that his PTSD was resolved prior to July of 2016 and the events complained of caused a flare up of his PTSD. (Doc. 43-1, at 37; Doc. 75, at 4.)

Cantrell claims that he was unaware during the summer of 2016 that Plaintiff lacked soap or toothpaste or that the lack of soap or toothpaste could cause injury to Plaintiff. (Doc. 73, at 3; Doc. 74, at 7.) Cantrell further represents that he had no knowledge of Plaintiff's medical or dental condition at the time. (Doc. 73, at 3; Doc. 74, at 7.) Finally, Cantrell avers that he had no authority to distribute state-issued indigent inmate hygiene kits and could only distribute what was donated to his office. (Doc. 73, at 3; Doc. 74, at 7; Doc. 43-3, at 2.)

### B. Standard of Law

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

The moving party bears the burden of demonstrating that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The moving party may meet this burden either by affirmatively producing evidence establishing that there is no genuine issue of material fact or by pointing out the absence of support in the record for the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the movant has discharged this burden, the nonmoving party can no longer rest upon the

7

allegations in the pleadings; rather, it must point to specific facts supported by evidence in the record demonstrating that there is a genuine issue for trial. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002).

At the summary-judgment stage, the Court may not weigh the evidence; its role is limited to determining whether the record contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A mere scintilla of evidence is not enough; the Court must determine whether a fair-minded jury could return a verdict in favor of the non-movant based on the record. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If not, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323.

### C. Analysis

"A prison official's deliberate indifference to a substantial risk of harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations and internal quotation marks omitted). "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* at 832 (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement," including ensuring "that inmates receive adequate food, clothing, shelter, and medical care." *Id.* (citations omitted).

To succeed on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show that (1) the alleged deprivation is "sufficiently serious"—*i.e.*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities," and (2) the prison official must have had a "sufficiently culpable state of mind," specifically "deliberate indifference" to an inmate's health or safety. *Id.* at 834 (citations and internal

8
Case 3:17-cv-00206-TRM-DCP   Document 77   Filed 08/11/20   Page 8 of 10   PageID #: 776

quotation marks omitted). The first requirement concerns the objective risk of harm, while the second requirement concerns the subjective mental state of the official accused of perpetrating or failing to prevent the harm. *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) (citing *Farmer*, 511 U.S. at 834, 837).

The Court need not determine whether Plaintiff has satisfied the first prong, because there is no genuine issue of material fact as to whether Cantrell acted with deliberate indifference to his health or safety. *See id.*; *Farmer*, 511 U.S. at 834. To show that a prison official acted with "deliberate indifference" toward the health and/or safety of an inmate, the inmate must show at least "that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Wilson*, 961 F.3d at 840. Thus, to be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Moreover, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. *Id.* at 844.

The only evidence that Cantrell knew of any risk of harm to Plaintiff are the two contact notes from June 27, 2016, and October 26, 2016. The contact notes indicate only that Cantrell provided Plaintiff with some hygiene items and do not specify whether Plaintiff mentioned anything about his physical or mental condition at the time he made the requests. (*See* Doc. 1, at 27–28; Doc. 43-3, at 3–4.) And Plaintiff has not otherwise shown that Cantrell knew about any of the injuries or ailments that Plaintiff claims are the result of the lack of toothpaste and soap. Further, Plaintiff's treating physician and dentist opined that a lack of toothpaste or soap would not have led to the injuries Plaintiff suffered. (*See* Docs. 43-7, 43-8.) Thus, the fact of Plaintiff's lack of hygiene items cannot reasonably be considered a "fact[] from which the

9

inference could be drawn that a substantial risk of serious harm exist[ed]," nor has Plaintiff offered any evidence that might indicate that Cantrell actually drew such an inference. *Farmer*, 511 U.S. at 837. Finally, to the extent there was any risk of serious harm as a result of Plaintiff's lack of hygiene items in the summer of 2016, there is no genuine dispute as to the reasonableness of Cantrell's response. On both occasions that Plaintiff contacted him in search of hygiene items, Cantrell provided him with some hygiene items and represents that he had no toothpaste to offer. (Doc. 74, at 6.) Plaintiff does not deny that Cantrell "only had authority to distribute whatever items the Chaplain's office received from donating churches" or that "[t]he office had no toothpaste to give"; he simply states that the truth of these statements is "unknown." (*See id.*; Doc. 75, at 2.) Plaintiff's response does not create a genuine issue of material fact regarding the reasonableness of Cantrell's response to his requests. Accordingly, Cantrell is entitled to judgment as a matter of law on Plaintiff's Eighth Amendment claim against him.

### III. CONCLUSION

For the reasons set forth above, Plaintiff's motion for instruction (Doc. 71) is **DENIED AS MOOT** and Defendant Cantrell's motion for summary judgment (Doc. 72) is **GRANTED**. This action will be **DISMISSED**.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**